UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HERBERT W. LUX, JR. et al.,

      Plaintiffs,

      v.

DARCI L. HULTQUIST et al.,

      Defendants.

24-CV-783-LJV
DECISION & ORDER

---

On August 22, 2024, the pro se plaintiffs, Herbert W. Lux, Jr. ("Lux"), and Janice M. Lux ("Ms. Lux"), commenced this action against fourteen defendants: New York State Supreme Court Justice Mark A. Montour and Erie County Court Judges Kenneth F. Case, James F. Bargnesi, and Susan M. Eagan ("the judicial defendants"); Roger L. Harris, Steven A. Norris, and Brian Seay, officers in the Sheriff's Department of Spotsylvania County, Virginia, and Paul R. Walther, Commonwealth Attorney of Culpeper County, Virginia ("the Virginia defendants");[1] and Erie County Sheriff's Deputies Darci L. Hultquist, Thomas M. Lederhouse, Joseph A. Stasio, Matthew P. Leuer, Paul J. Reed, and Jeremy R. Lehning ("the Erie County defendants").  Docket Item 1.  The complaint raises claims under 42 U.S.C. § 1983 in connection with Lux's arrest and extradition from New York to Virginia.  *Id.*  After the plaintiffs amended the

---

[1] The complaint and amended complaint name "SA Norris" and "B. Seay" as defendants.  Docket Items 1 and 17.  But the Virginia defendants have identified them as "Steven A. Norris" and "Brian Seay."  Docket Item 21.

complaint on January 22, 2025, Docket Item 17, the defendants moved to dismiss, *see* Docket Items 19, 21, and 23.[2]

For the reasons that follow, the judicial defendants' motion to dismiss, Docket Item 19, and the Virginia defendants' motion to dismiss, Docket Item 21, are granted. The Erie County defendants' motion to dismiss, Docket Item 23, is denied.

## BACKGROUND[3]

### I.    LUX'S ARREST

On August 23, 2021, defendant Walther, a prosecutor in Culpeper County, Virginia, called the Sheriff's Office in Spotsylvania County, Virginia.  Walther asked the Spotsylvania County sheriff's deputies to contact their counterparts in the Sheriff's Department in Erie County, New York, and ask them to arrest Lux so that he could be extradited to Virginia to face criminal charges there.[4]  Docket Item 17 at 2-3.  Walther made that request without a warrant, affidavit, or certified copy of the charges.  *Id.* at 3.

---

[2] All defendants have moved to dismiss the claims against them—the judicial defendants in Docket Item 19; the Virginia defendants in Docket Item 21; and the Erie County defendants in Docket Item 23.

[3] The following facts are taken from the amended complaint, Docket Item 17.  On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The amended complaint makes several conclusory allegations that the defendants violated the plaintiffs' constitutional rights, but the Court accepts only the facts in the amended complaint—not the legal conclusions—as true.  *See id.*  Moreover, because the plaintiffs are proceeding pro se, the Court "construe[s] their] complaint liberally."  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

[4] Walther was "acting as [a s]pecial [p]rosecutor" on Lux's cases in Virginia.  *See* Docket Item 17 at 2-3.

That evening, the Spotsylvania County sheriff's deputies did what Walther asked: Deputy Norris, with Deputy Harris's authorization, contacted the Erie County Sheriff's Department.  *Id.* ¶ 2.  He reached Erie County Sheriff's Deputy Hultquist and asked her to "please send [a] hit" if Lux was located.  *Id.*  Hultquist relayed Norris's message to Deputy Lederhouse, who "then dispatched Officers Paul J. Reed . . . , Joseph A. Stasio . . . , Matthew P. Leuer . . . , and Jeremy R. Lehning" to the Luxes' home in East Concord, New York.  *Id.* ¶¶ 2-4.

When the officers arrived, they knocked on the door.  *Id.* ¶ 4.  Lux "went to the door to see who was there" and "opened the interior door [so that he could] hear better."  *Id.*  Although Lux recognized the visitors as law enforcement officers, they did not identify themselves or explain why they were there.  *Id.*

Stasio told Lux that someone had run into the mailbox and asked Lux to step outside to speak to them.  *Id.*  Lux declined and backed away.  *See id.*  "Stasio then reached inside the house . . . [,] grabbed . . . Lux by his shirt and tried to pull him out of the house, almost tearing his shirt off."  *Id.*  Stasio went inside, "knocking . . . [the Luxes on]to the floor[,] injuring Ms. Lux's right arm[, and] causing [her] . . . swelling and pain."  *Id.*  Leuer, Reed, and Lehning "followed Stasio into the house" and arrested Lux.  *Id.*

Stasio then took Lux out of the house to transport him to the Erie County Holding Center.  *Id.* ¶ 6.  Before putting Lux in his car, Stasio "squeeze[d]" a handcuff onto Lux's wrist, "cutting of[f] circulation to [his] hand[ and] causing [him] pain."  *Id.*  When Lux told the officers that he was in pain, none of them did anything about it.  *See id.*

The deputies took Lux to the Erie County Holding Center.  *Id.*  When they arrived, Lux asked for a copy of "the [w]arrant . . . and the documents giving them the authority"

3

to arrest and incarcerate him, but no one gave him anything. *Id.* ¶ 7. In fact, even though the deputies stated in "various records that they were executing a warrant of arrest against . . . Lux," there actually "was never a valid warrant of arrest issued to incarcerate and ho[l]d . . . Lux for extradition." *See id.* ¶ 11.

## II.    LUX'S EXTRADITION HEARINGS

Lux's extradition proceedings began on August 27, 2021. *Id.* ¶ 15. He first appeared before Justice Montour, who allowed Brent S. Salvesky—the "Attorney of the Day"—to represent Lux against Lux's wishes. *Id.* Justice Montour never told Lux that he had the right to represent himself, the right to hire counsel of his choice, and the right to a public defender if he could not afford to retain an attorney. *Id.* Instead, Justice Montour simply referred to Salvesky as Lux's attorney and treated the arraignment as a preliminary hearing, which Lux did not have time to prepare for. *Id.* ¶ 16.

On September 22, 2021, Lux had another extradition hearing, this time before Judge Case. *Id.* ¶ 17. At that time, there still was no "valid arrest warrant" as required "to hold . . . Lux for extradition to Virginia." *Id.* ¶ 17.a. Nevertheless, "Lux was brought into [c]ourt with ankle shackles, a[] belly chain[, and] his hands chained to each side of his wa[ist]." *Id.* ¶ 17.b. Lux asked Judge Case "to have his hands unchained so he could defend himself," but Judge Case denied that request. *Id.* As a result, Lux could not "access relevant documents[,] . . . present relevant code sections[ and] case law[,] . . . [or] take notes." *Id.*

Indeed, all four judicial defendants "displayed a callous disregard for . . . the Constitution" and "would [not] allow any information to be presented regarding the lack of jurisdiction" over Lux's extradition proceedings. *Id.* ¶ 14. They kept "Lux shackled at

4

his ankles[ and] kept a belly chain around [his] waist with his hands cuffed on each side of his body," making it "impossible for [him] to defend himself." *Id.* In fact, "[t]here appears to be a policy and procedure" in the Western New York courts to violate a defendant's "right of self-representation or to have an attorney of [his or her] choice." *Id.* ¶ 15.

On November 3, 2021, Judge Eagan "served" Lux with a warrant to extradite him to Virginia. *Id.* ¶¶ 13, 18. But the warrant was "fraudulent": It stated that Andrew Cuomo was the Governor of New York, but "Kathy Hochal [sic]" was actually the Governor of New York and signed the warrant. *Id.* ¶ 13. And when Lux asked Judge Eagan how much time he had to file a writ of habeas corpus, Judge Eagan responded, "I cannot give you legal advice, Mr. Lux." *Id.* ¶ 18.

Two days later, Lux got ready for a court appearance even though he was not told why he was going to court and was not given prior notice. *Id.* ¶ 13. He was transported from the Erie County Correctional Facility to the Erie County Holding Center, but he waited there "all day . . . without ever being taken into [c]ourt." *Id.*

Lux returned to court on November 8, 2021, for another extradition hearing before Judge Case.[5] *See id.* Judge Case refused to hear Lux's arguments that the warrant was invalid, that his arrest was unlawful, and that he was entitled to more time to request a writ of habeas corpus. *See id.* Instead, Judge Case simply told Lux, "You['re] going back to Virginia." *Id.* ¶ 19.

---

[5] The amended complaint describes essentially the same events at the September 22, 2021, and November 8, 2021, hearings. *See id.* ¶¶ 13, 17.

"On or about November 18, 2021," Lux was "transported back to Virginia."  *Id.* ¶ 20.  During the process, Lux told "John or . . . Jane Doe" officers from Spotsylvania County "that he had been denied the opportunity to apply for a writ of habeas corpus" or a hearing.  *Id.*  But the officers ignored what he said and transported him "to the Rappahannock Security Center in Stafford County[, Virginia], where he was again unlawfully incarcerated."  *Id.*

The plaintiffs filed this action about three years later.  *See* Docket Item 1.  Lux seeks $1,000,000 in compensatory damages and $350,000 in punitive damages from each defendant for violating his rights under the Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments.  *See* Docket Item 17 at 11 ("V. Relief").  Ms. Lux seeks $100,000 in compensatory damages and $350,000 in punitive damages from each defendant for the same violations.  *See id.*

## DISCUSSION

## I.    THE JUDICIAL DEFENDANTS' MOTION TO DISMISS

The judicial defendants argue that the claims against them should be dismissed, among other reasons, because they are protected by judicial immunity.  *See* Docket Item 19-1 at 6-7.  This Court agrees.[6]

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  More specifically, "acts arising out of, or related to, individual cases before the

---

[6] Because this Court finds that judicial immunity bars the claims against the judicial defendants, it does not address their other arguments for dismissal.

judge are considered judicial in nature." *Id.* at 210. Judicial immunity ensures "that a judicial officer, in exercising the authority vested in [that judge], shall be free to act upon [his or her] own convictions, without apprehension of personal consequences." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). It therefore does not give way even to "allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). And "[l]ike other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In fact, judicial "immunity is overcome in only two sets of circumstances." *Id*. "[A] judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity," or for "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12 (citations and italics omitted).

The plaintiffs claim that the judicial defendants improperly handled Lux's extradition proceedings in ways that deprived Lux of his constitutional rights. *See* Docket Item 17 ¶¶ 15-19. By their very nature, those claims are based on what the judicial defendants did in their roles as judges presiding over Lux's extradition proceedings—that is, acts and decisions that are undoubtedly judicial in nature. *See Bliven*, 579 F.3d at 210. And while the plaintiffs say that the judicial defendants would not let Lux raise jurisdictional arguments during his extradition proceedings, Docket Item 17 ¶ 14, they do not suggest that the judicial defendants acted in "the complete absence of all jurisdiction" when they presided over those proceedings.

In other words, the claims against the judicial defendants arise from actions that they took as judges in matters within their jurisdiction. For that reason, judicial immunity bars those claims, and the judicial defendants' motion to dismiss is granted.

## II.    THE VIRGINIA DEFENDANTS' MOTION TO DISMISS

The Virginia defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  *See* Docket Item 21-1 ¶ 2.  First, the Virginia defendants argue that "this Court lacks personal jurisdiction over the[m]."  Docket Item 21-4 at 7.  Second, they argue that the claims against them "have already been fully and fairly litigated and resolved against [the plaintiffs]" and therefore are precluded by collateral estoppel.  *Id.* And third, they argue that the claims against them "fail to state a cause of action" under the relevant constitutional amendments.  *See id*.

The Court assumes without deciding that it has personal jurisdiction over the Virginia defendants.[7]  But the Court agrees with the Virginia defendants that collateral estoppel bars the plaintiffs' claims against them.  Therefore, the Court dismisses all claims against the Virginia defendants without addressing whether those claims are viable under section 1983.

Collateral estoppel "bars litigation of an issue when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (citation and internal quotation marks omitted).  "[A] court may dismiss a claim on . . . collateral estoppel

---

[7] The Second Circuit has explained that "[a]lthough [it] traditionally treat[s] personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) (internal citation omitted).  Here, there is no good reason to address the jurisdictional issues because it is so clear that the claims against the Virginia defendants are barred by collateral estoppel.

grounds on a Rule 12(b)(6) motion." *Trotman v. McCoy*, 2024 WL 3759757, at *7 (W.D.N.Y. Aug. 12, 2024) (quoting *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014)).

The Virginia defendants argue that "a review of the pleadings in this action, along with those filed in the plaintiffs' prior [section] 1983 lawsuit in the [Eastern District of] Virginia, shows that the claims against the Virginia defendants in both actions are 'the same and arise out of the same events and that the first action was dismissed with prejudice on the merits.'" Docket Item 21-4 at 8 (internal alterations omitted). After carefully reviewing the amended complaint in this action, the complaint in the Eastern District of Virginia case ("the Virginia case" or "the Virginia action"),[8] and the decision dismissing the Virginia case, this Court agrees.

First, "identical issues" were raised in both cases. With only insignificant differences and additional minor details, the same plaintiffs assert the same claims against the same defendants arising from the same set of facts in both this case and the Virginia case. In both actions, the plaintiffs claim that the Virginia defendants violated their rights through the defendants' involvement in Lux's extradition from New York to Virginia in August 2021. *See generally* Docket Items 17 and 21-3; *see Lux*, No. 3:23-cv-541, Docket Item 1 (E.D. Va. Aug. 23, 2023). Because the parties, the facts, and the claims are all the same, the "issues" in both cases are "identical."

---

[8] The Court takes judicial notice of the proceedings in the section 1983 action brought by the Luxes in the Eastern District of Virginia, *Lux v. Harris*, No. 3:23-cv-541(E.D. Va. Aug. 23, 2023). *See Ng v. Sedgwick Claims Mgmt. Servs. Inc.*, 2024 WL 4827574, at *4 (S.D.N.Y. Nov. 19, 2024) ("[C]ourts may take judicial notice of public documents or matters of public record . . . including the contents of court dockets." (citations omitted)).

Second, as the Virginia defendants correctly observe, the plaintiffs were "afforded . . . a full opportunity to contest the bases for dismissal" of their Virginia case. Docket Item 21-4 at 9.  In fact, Hon. Roderick C. Young, United States District Judge for the Eastern District of Virginia, carefully considered the plaintiffs' claims, gave them the opportunity to respond to the motion to dismiss,[9] applied the correct legal standards, and issued a well-reasoned decision.  *See Lux*, 2024 WL 4124682.  Judge Young explicitly accepted the plaintiffs' allegations as true, and he "view[ed] all facts and dr[ew] all reasonable inferences in the light most favorable to [the] plaintiff[s]."  *Id.* at *1, 3-4. What is more, the plaintiffs could have "appeal[ed Judge Young]'s decision to the United States Court of Appeals for the Fourth Circuit" but did not, Docket Item 21-4 at 6; likewise they could have, but did not, "seek re-argument or reconsideration in the Virginia district court," Docket Item 21-1 ¶ 5.  *See* Ct. Docket, *Lux*, No. 3:23-cv-541 (E.D. Va. Aug. 23, 2023).

Third, the decision granting the Virginia defendants' motion to dismiss in the Virginia case was a final judgment on the merits.  The plaintiffs assert that Judge Young's dismissal under Rule 12(b)(6) was "procedural" and not on the merits.  *See* Docket Item 27 at 4.  But the Second Circuit has held otherwise:  In *Berrios v. New York City Housing Authority*, 564 F.3d 130, 134 (2d Cir. 2009), the court held that "the sufficiency of a complaint to state a claim on which relief may be granted is a question of law" and that "dismissal for failure to state a claim is a final judgment on the merits." In his decision, Judge Young granted the Virginia defendants' motion to dismiss in its

---

[9] In fact, Judge Young accepted the plaintiffs' opposition papers even though they were filed late.  *See Lux v. Harris*, 2024 WL 4124682, at *1 n.2 (E.D. Va. Sept. 9, 2024).

10

entirety, holding that the Luxes failed to state viable section 1983 claims for unlawful arrest, malicious prosecution, and excessive force. *See Lux*, 2024 WL 4124682, at *4-8; *see also* Docket Item 21-2 at 6-16. Therefore, the dismissal of the claims against the Virginia defendants in the Virginia action was a final judgment on the merits.

Finally, resolution of the issues presented in this case was necessary to support the valid and final judgment on the merits in the Virginia action. *See Proctor*, 715 F.3d at 414; *see also* Docket Item 21-3. Indeed, Judge Young dismissed the Virginia case precisely because he found that the plaintiffs had not adequately pleaded section 1983 claims against the Virginia defendants, *see Lux*, 2024 WL 4124682, at *4-8—the very claims that the same plaintiffs plead against the same defendants here, *see* Docket Item 17.

For all those reasons, the plaintiffs' claims against the Virginia defendants are barred by collateral estoppel and are dismissed. Those claims were already decided in the Eastern District of Virginia, and collateral estoppel precludes the plaintiffs from taking a second bite of the apple in this Court.

### III.   THE ERIE COUNTY DEFENDANTS' MOTION TO DISMISS

The Erie County defendants move to dismiss the amended complaint under Rule 12(b)(3), arguing that venue in this Court is improper under the "first-filed rule."[10] Docket Item 23-2 at 2.

---

[10] The Second Circuit has construed the first-filed inquiry as a venue issue because "'balance of convenience' is determined by considering the same factors 'considered in connection with motions to transfer venue.'" *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *see Walsh v. Nelnet Servicing, LLC*, 2025 WL 2022631 (S.D.N.Y. July 18, 2025).

Under the first-filed rule, "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986) (citation and internal alterations omitted). As the defendants note, courts have "broad discretion to dismiss a lawsuit that is duplicative of a prior action," Docket Item 23-2 at 2 (citing *Byron v. Genovese Drug Stores, Inc.*, 2011 WL 4962499, at *2 (E.D.N.Y. 2011)), because courts have the "power to administer [their] docket[s] to conserve judicial resources[] and to promote the efficient and comprehensive disposition of cases." *Id.* at 2-3.

The plaintiffs sued the Erie County defendants in the Eastern District of Virginia in August 2023, and they commenced this case against the same defendants in 2024. Moreover, both this case and the Virginia case allege the same violations of the plaintiffs' constitutional rights and the same injuries based on the same incidents. *Compare* Docket Item 17 (amended complaint) *with* Docket Item 21-3 (complaint in Virginia action).

The plaintiffs argue that the first-filed rule does not apply here because they no longer have a case pending in the Eastern District of Virginia. *See* Docket Item 28 at 9. In fact, on April 28, 2025, the plaintiffs filed a notice of voluntary dismissal in the Virginia action, dismissing the Erie County defendants from the case. *Id.* at 42-43; *Lux*, No. 3:23-cv-541, Docket Item 27 (E.D. Va. Apr. 28, 2025). So there no longer are "two competing lawsuits," and the first-filed rule does not apply to the plaintiffs' claims against the Erie County defendants.

12

The Erie County defendants' motion to dismiss therefore is denied.

## CONCLUSION

For all those reasons, the judicial defendants' and Virginia defendants' motions to dismiss, Docket Items 19 and 21, are GRANTED, and the Erie County defendants' motion to dismiss, Docket Item 23, is DENIED. The Clerk of the Court shall remove Justice Mark A. Montour, Judge Kenneth F. Case, Judge James F. Bargnesi, Judge Susan M. Eagan, Roger L. Harris, Steven A. Norris, Brian Seay, and Paul R. Walther as defendants. The Erie County defendants shall answer the amended complaint **within 30 days of the date of this order**.

SO ORDERED.

Dated:    March 31, 2026
          Buffalo, New York


                                    /s/ Lawrence J. Vilardo
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE

13